**FAMILY LAW**

**ADOPTION − SOCIAL SERVICES − DISCLOSURE OF ADOPTION RECORDS − FACILITATING REUNIONS − ADMINISTRATION OF MUTUAL CONSENT REGISTRY**


February 15, 1994


*The Honorable Carolyn W. Colvin*
*Secretary of Human Resources*

You have requested our opinion on several issues relating to the authority of local departments of social services to provide postadoption services to adoptees and birth parents. Specifically, you have asked:

1.    To what extent may local departments of social services ("local departments") disclose information from agency adoption records to birth parents or adoptees?

2.    What is the effect on the confidentiality of adoption records of a birth parent's or an adoptee's consent to disclosure?

3.    To what extent may local departments facilitate reunions between birth parents and adult adoptees?

4.    What services is the Department of Human Resources ("DHR" or the "Department") authorized to provide when a party to an adoption has registered with the Mutual Consent Voluntary Adoption Registry?

Your questions arise as a result of a potential conflict that you have identified between laws designed to protect the confidentiality of social service records, and adoption records in particular, and the interest of DHR and local departments in providing postadoption services to birth parents and adoptees consistent with a national trend liberalizing access to adoption records.

For the reasons stated below, we conclude as follows:

1.    Absent consent of an adoptee and his or her birth parents, the only information that local departments may disclose from an adoption record is nonidentifying medical information to an adoptee.

2.    Under Maryland statute and regulation, either a birth parent or an adult adoptee may consent to the disclosure to the other of information in an adoption record.

3.    A local department may facilitate reunions between adult adoptees and their birth parents in a variety of ways as long as no identifying information is disclosed without consent of all parties.

4.    The statute creating the Mutual Consent Voluntary Adoption Registry imposes specific obligations on the Department to match registrants or to provide matching information. Depending on who has registered and the circumstances of the adoption, the statute may require DHR to seek access to adoption records to gain additional information or to locate one or more of the birth parents.

# I

## Background

DHR's Social Services Administration ("SSA") is the "central coordinating and directing agency of all social service ... activities in this State." Article 88A, §3(a)(1) of the Maryland Code. In each county in Maryland, including Baltimore City, a local department administers the social service activities. *See generally* 61 *Opinions of the Attorney General* 786, 787-88 (1976).[1]  Social service activities include child welfare services, which include services related to the placement of children for adoption. §5-524 of the Family Law ("FL") Article, Maryland Code.

In placing children for adoption, a local department must obtain and consider all available information bearing on the children's best interests, including the circumstances necessitating their removal from their birth parents. *See* FL §5-313 (required

---

[1] That opinion reviewed the legal status of the local departments, concluding that they were part of the Executive Branch of State Government. 61 *Opinions of the Attorney General* at 793 and 795. *See also* 75 *Opinions of the Attorney General* 415 (1990).

considerations in termination of parental rights). As a result, agency files often contain very personal information about the children as well as about the birth parents – for example, details of a drug or alcohol addiction or of a physical or psychological impairment.

Consequently, as discussed below, both the federal and the State governments have enacted laws and adopted regulations to ensure that State and local agencies protect the privacy of these and other social services recipients. In addition, because of the traditional view that a birth parent might disrupt the relationship between an adoptee and the adoptive family, Maryland, like most other states, has in place special safeguards sealing adoption records to prevent the "disturbance" of the adoptive placement. *See* FL §5-303(b)(3)(ii); Levin, *The Adoption Trilemma: The Adult Adoptee's Emerging Search for His Ancestral Identity*, 8 U. Balt. L. Rev. 496, 497 (1979).

## II

## Statutory and Regulatory Framework

### A. *Confidentiality Provisions*

Several statutory provisions safeguard information related to adoptions. First, as a condition to the State's receiving federal money to administer a subsidized foster care and subsidized adoption program under Title IV-E of the Social Security Act, federal law requires that the State provide safeguards restricting the use or disclosure of information concerning individuals assisted under those programs to purposes directly connected with those programs. 42 U.S.C. §671(a)(8); 45 C.F.R. §§205.50(a)(1)(i) and 1355.30(l).

To implement this requirement and similar requirements in other titles of the Social Security Act, the General Assembly enacted Article 88A, §6(a) of the Maryland Code. This statute provides that, except under court order or to a State or federal employee when necessary for the administration of public assistance, medical assistance, or social services, it is unlawful for any State employee to "divulge or make known in any manner any information concerning any applicant for or recipient of social services, [or] child welfare services . . . directly or indirectly derived from the records, papers, files, investigations or communications of [State or county

agencies]."    Anyone who violates this provision is subject to criminal liability.  Article 88A, §6(e).

In addition, the Maryland Public Information Act ("PIA") specifically provides that, "[u]nless otherwise provided by law ... [a] custodian shall deny inspection of public records that relate to the adoption of an individual."  *See* §10-616(b) of the State Government ("SG") Article, Maryland Code.  SG §§10-626 and 10-627 subject anyone who willfully and knowingly permits inspection of such records to civil and criminal liability.

Two other provisions of law impose confidentiality requirements on certain adoption records.  Under §4-211 of the Health-General ("HG") Article, Maryland Code, when a child is adopted, the original birth certificate is sealed and a new birth certificate is issued recording the adoptive parents as the child's parents.  Finally, Maryland Rule D80 requires that all court records related to adoptions be sealed and not open to inspection to any person except by court order.

## B.    *Statutory Disclosure Provisions*

The General Assembly has enacted two statutes that allow for very limited disclosures from otherwise-sealed adoption records.

First, FL §5-329 sets out the circumstances under which a court may permit disclosure of medical information from a court or agency adoption record to an adoptee.  Specifically, as amended in 1993, FL §5-329(a)(1) provides that, upon petition by an adoptee and without any particular showing of need, "a court shall order that part of a court record or adoption agency record containing medical information to be opened to inspection by the individual."  Where an adoption agency record exists, the statute requires the adoptee to make inquiry of the agency before petitioning the court:  "the court may not grant the petition unless the adoption agency has refused to release the medical information."  FL §5-329(a)(2).  If adoption records do not contain medical information and the court finds that the adopted individual is in urgent need of the medical information, it may appoint an intermediary to seek the needed information from the adoptee's birth parents and report it to the court for disclosure to the adoptee.  FL §5-329(c) and (d).  By way of limitation, however, the statute prohibits, under any circumstance, the disclosure to the

adoptee of any information that identifies the birth parents or their location. FL §5-329(b), (d)(1), and (d)(3).[2]

Second, FL Title 5, Subtitle 4A, which the General Assembly enacted in 1986, directs SSA to establish the Mutual Consent Voluntary Adoption Registry. The purpose of the Registry is to allow birth parents, adult adoptees, and birth siblings to register and learn the identity of a related child, parent, or sibling who also has registered. In addition, the statute provides that an adult adoptee may receive matching information if both birth parents are deceased.

## C.   *Regulatory Disclosure Provisions*

DHR regulations provide that local departments will provide certain postadoption services to adoptees, adoptive families, and birth parents. *See* COMAR 07.02.12.20. These postadoption services include disclosure of information from social service records relating to adoptions. Specifically, the regulations provide for the release of information as follows:

> 1. to the adoptive family: information acquired after the adoption as to the medical, social, psychological, and genetic history of the minor adoptee; and medical information critical to the adoptee's growth and development. COMAR 07.02.12.20.B(3), C(3);

> 2. to birth parents: medical information that may be critical to the birth family from the adoptive family or adult adoptee; nonidentifying information; and identifying information if written consent has been given. COMAR 07.02.12.20(B)(3),C(4), C(5), C(7), D(6).

> 3. to a minor adoptee: nonidentifying information with the consent and involvement of the adoptive parent. COMAR 07.02.12.20.B(4).

---

[2] The actual term used in the statute is "natural parents." This term is synonymous with the preferred term "birth parents," which we use in this opinion.

4.   to an adult adoptee:   medical information from the birth parent that is critical to the adoptee's growth and development; confidential or identifying information if written consent has been given by the birth parent; and nonidentifying information. COMAR 07.02.12.20C(3), D(3), D(4).

The regulations also provide that, as part of its postadoption services to birth parents and to adult adoptees, the local department will facilitate reunion with birth relatives when all appropriate parties have consented.  COMAR 07.02.12.20B(6), D(5).  This service is provided in addition to referring adult adoptees and birth parents to the Registry.

### III

### Scope of Permissible Disclosure of Information

The first two questions you raise concern a local department's authority to disclose information from its adoption records.[3] Without consent, the effect of which we will address in Part IV below, Article 88A, §6(a) would appear to bar a local department from disclosing any information from agency records to any party to an adoption. Applying principles of statutory construction, however, we conclude that FL §5-329 creates an implied exception to Article 88A, §6(a) for the disclosure of nonidentifying medical information to an adoptee. Otherwise, without consent, Article 88A serves as a bar to the disclosure of any information from an adoption record after the adoption has been finalized.[4]

---

[3] We have used the term "adoption records" to refer to any record pertaining to the adoption of the child, which might in some circumstances be part of other records maintained by a local department such as those relating to child protective services, foster care, or termination of parental rights.

[4] The General Assembly has recognized that, before the finalization of an adoption, local departments must share information with adoptive parents about birth parents and the adoptee.  *See* FL §5-303(b)(3)(i) (a purpose of the adoption and guardianship statutes is to protect adoptive

(continued...)

In construing the provisions of Article 88A and of FL §5-329, we must be faithful to "the purpose of the legislation, determined in light of the statute's language and context." *Leppo v. State Highway Administration*, 330 Md. 416, 422, 624 A.2d 539 (1993). "Context may include related statutes, pertinent legislative history and 'other material that fairly bears on the fundamental issue of legislative purpose or goal ....'" *Government Employees Ins. Co. v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713 (1993) (quoting *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987)). *See also, e.g., Harris v. State*, 331 Md. 137, 146, 626 A.2d 946 (1993). Context may also include the relationship of one piece of legislation to earlier and subsequent legislation. *Harris,* 331 Md. at 146. Finally, "construction requires that the statute be given a reasonable interpretation, not one that is illogical or incompatible with common sense." 331 Md. at 145.

As set forth in Part IIB above, recent amendments to FL §5-329 require courts to disclose to adoptees, upon request, all nonidentifying medical information from agency or court adoption files without any showing of need. The General Assembly requires, however, that, in the case of an adoption agency record, the adoptee seek the medical information first from the agency.[5] Because of this provision, it would make little sense to interpret FL §5-329 as anything other than an exception to Article 88A's general prohibition against the release of social service records. It would defy common sense to suppose that the General Assembly meant to require a local department to deny an adoptee's request for nonidentifying medical information, only to require the court to release the same information without further showing.[6] Such an exercise in empty formality serves no purpose, particularly since the

---

[4] (...continued)
parents by providing them with information about the child and the child's background).

[5] The term "adoption agency record" appears to refer both to records held by private child placement agencies and by local departments. These are the only "agencies" authorized by law to arrange for the placement of children for adoption.

[6] The statute requires no showing of need and states that the court "*shall* order" the release of the information. The General Assembly evidently intended not to grant the court any discretion to deny the request.

birth parents cannot be affected adversely by the disclosure of nonidentifying information.

The exception to Article 88A created by FL §5-329, however, is narrow: it extends only to the release of nonidentifying medical information to an adoptee. As to what information constitutes "medical" information, we look to HG §4-301, which relates to the confidentiality of health-related records. Although this provision of the Medical Records Act relates generally to the confidentiality of treatment records, HG §4-301(g)(1)(iii) refers to a "medical" record as any record that "relates to the health care of the patient or recipient." By extrapolation, therefore, the "medical" information that at an adoptee may receive is any information in an adoption record that "relates to the health care" of the adoptee. To assure that the information sought is, indeed, related to the health care of the inquirer, a local department may require a statement of a health care provider that the person is under his or her care and that the information sought is related to the health care of the individual.[7]

The disclosure of medical information from an adoption file does not violate the provisions of federal law, because our interpretation of Maryland's statutory scheme does limit disclosure to purposes connected with the provision of services to an adoptee. *See* 45 C.F.R. §205.50(a). Nor does our construction of Article 88A and FL §5-329 violate the PIA. In SG §10-616(a), the PIA specifically allows disclosure of information from adoption records where otherwise provided by law.

Consistent with the provisions of FL §5-329, the local department may *never* release any identifying information without consent, regardless of whether it is medical information.

---

[7] Pursuant to HG §4-301(h), a health care provider is "a person who is licensed, certified or otherwise authorized under the Health Occupations Article to provide health care in the ordinary course of business or practice of a profession or in an approved education or training program;" or a health care facility. Such persons would include physicians, psychologists, professional counselors, and licensed social workers, among other licensed professionals.

## IV

### The Effect of Consent on Disclosure

DHR's regulations provide for the disclosure of identifying or other confidential information to a birth parent if the adoptee is an adult and consents, or to an adult adoptee with consent of the birth parents. COMAR 07.02.12.20C(5) and D(4). As long as the consent is provided in writing consistent with the provisions of COMAR 07.01.07.05, this disclosure does not violate Maryland or federal law.

First, federal regulations, implementing the federal statute pursuant to which Maryland enacted Article 88A, specifically allow for consent to the disclosure of otherwise confidential records. *See* 45 C.F.R. §§205.50(a)(2)(iii), 1355.21, and 1355.30. Second, the Department's own regulations, which track the federal regulations in implementing the provisions of Article 88A, expressly provide for consent to disclosure of social services records. *See* COMAR 07.01.07.04(C), 05.[8]

Finally, disclosure with consent does not offend the provisions of FL §5-329. That provision does not address the circumstances under which an agency might elect to make a broader disclosure than that required by the provision itself.

Therefore, Maryland regulations properly allow for either an adult adoptee or a birth parent to consent to the disclosure of information to the other, provided the consent is obtained in conformity with the provisions of COMAR 07.01.07.05.[9]

---

[8] While those regulations generally restrict the release of information to a third party who is not the subject of the record, they contain an exception where a regulation provides otherwise. COMAR 07.02.12.20 is such a regulation.

[9] The fact that information may be disclosed with consent in no way imposes an obligation on a local department or DHR to make affirmative efforts to contact the parties to determine whether they will the consent.

**V**

**Facilitating Reunions**

The Department's regulations specifically authorize the local department to facilitate reunion between birth parents and adult adoptees when all parties have voluntarily consented. *See* COMAR 07.02.12.20C(6) and D(5).

Although two reported opinions and at least one unreported opinion have addressed the issue of having an intermediary serve as a go-between in facilitating reunions, they have done so only in the context of FL §5-329 as it read prior to October 1993. *See In re Adoption No. 147*, 314 Md. 719, 722 n.2, 552 A.2d 1299 (1989) (refusing to consider whether the laws establishing the Registry sanctioned judicial appointment of an intermediary but noting that the Legislature did not adopt proposals by a Governor's Commission to Study Adoption authorizing judicial appointment of an intermediary); *L.F.M. v. Department of Social Services*, 67 Md. App. 379, 393 n.11, 507 A.2d 1151 (1986) (noting that the Legislature has rejected several proposals to open records through use of an intermediary); *Ex parte in the Matter of the Petition of P.M.H.*, Adoption Equity No. 5282 (Cir. Ct. Montgomery Co. 1992) (Messitte, J.) (suggesting that an adoptee may have a right to have an intermediary appointed for cause in the medical context if not in the Registry context).[10]

Prior to October 1993, FL §5-329 made no provision for a court to appoint an intermediary to assist an adoptee in getting information from his or her birth parents. In Chapter 231 (Senate Bill 323) of the Laws of Maryland 1993, however, the General Assembly amended FL §5-329 and specifically authorized courts to appoint an intermediary to solicit information from birth parents where an adoptee or a blood relative of an adoptee is in urgent need of particular medical information. While this amendment served to clarify the authorization for a court to appoint an intermediary, it in

---

[10] Judge Messitte's decision may be found in the bill file of Senate Bill 323 of the 1993 Session, appended to his testimony in support of the bill.

no way prevented a local department or an agency from itself serving an as intermediary in a case where no court involvement was sought or was necessary.

Nor does the fact that Maryland operates the Mutual Consent Voluntary Adoption Registry prevent a local department from facilitating a reunion independent of the Registry. The Registry was intended to make available to all adult adoptees, their siblings, and birth parents the opportunity to make contact regardless of whether the adoption was facilitated by a child placement agency, a local department, or by private attorneys. That legislative scheme does not prevent a local department from using information in its records to facilitate a reunion outside of the Registry, as long as the local department adheres to the requirements related to the confidentiality of adoption records discussed earlier in this opinion.

## VI

### Services under the Mutual Consent
### Voluntary Adoption Registry

Your final inquiry pertains to the services the Department is authorized to provide when a party to an adoption has registered with the Mutual Consent Voluntary Adoption Registry. Because the language of the Registry statute, considered in light of its intent, makes it clear what the General Assembly intended, we may stop our analysis there. *Leppo v. State Highway Administration*, 330 Md. 416, 422, 624 A.2d 539 (1993).

SSA is obliged by the statute to establish and maintain a Registry and to accept registrations of adult adoptees, their siblings, and birth parents. FL §5-4A-03. The statute also requires SSA to "attempt to match registrants or to provide matching information." FL §5-4A-07(a)(1). SSA must recognize a match under a number of circumstances.

First, SSA must recognize a match if an adult adoptee and both birth parents or a birth sibling register. FL §5-4A-07(b)(2). Second, where only an adult adoptee and one birth parent register, SSA must still recognize a match if it finds any of the circumstances set forth

in FL §5-4A-07(b)(2).  FL §5-4A-07(b)(2)(i) and (v) provide that a match is made if no notice of the petition for adoption or guardianship was given to the nonregistering parent, or if notice was given and the parent did not participate in the proceedings.  FL §5-4A-07(b)(2)(ii) provides that a match is made if a birth mother and the adult adoptee register and if "there is no known [birth] father." This circumstance may be established judicially under FL §5-4A-07(b)(2)(iii), if the birth mother, an agency, or SSA obtains a copy of a judgment from the court that handled the adoption to the effect that the identity of the birth father is unknown.  SSA also may make a match if it has evidence that the other birth parent is dead.  FL §5-4A-07(b)(2)(iv).

Finally, if only the adult adoptee and one birth parent register and none of circumstances set forth above exist, a match is automatically made if an adult adoptee and one birth parent have registered and a year has passed during which the other birth parent has not filed a statement vetoing a match.  §5-4A-07(b)(2)(vi).[11]

The Registry statute expressly provides that, if necessary to make a match, the agency may "inquire into the records of a child placement agency, local department, or court that issued an adoption or guardianship decree."  FL §5-4A-07(c).  In view of the statute's affirmative requirement that SSA attempt to make matches, FL §5-4A-07(a)(1), SSA may be required to seek access to such records.

SSA is also authorized to consult the records of other agency or a court to provide "matching information."  FL §5-4A-07(c). SSA is required to provide matching information to an adoptee who registers "if both [birth] parents are deceased."  FL §5-4A-07(b)(3). Indeed, it may be necessary for the agency to seek access to court and other agency records to perform this task.[12]

---

[11] The only way that this one year period could be shortened is if the nonregistering parent were notified of the registration and elected to register.  *See* FL §5-4A-07(b)(1)(i).  Nothing in the statute would prevent SSA or a registering parent from notifying the nonregistering party of his or her right to register.  This notice also would serve to alert the nonregistering parent of his or her right to block the match.

[12] If the agency contacts birth parents to verify that they are alive, the agency may, but is not required to, inform the parents of the Registry and that another party to the adoption has registered.

When SSA is able to make a match, the statute directs the child placement agency, if known, or a local department to notify the registrants. FL §5-4A-07(a)(2). The same procedures apply when the local department is obliged to provide matching information.

Consistent with the admonition expressed in FL §5-329, the agency should not in any way encourage or discourage contact between the adult adoptee and the birth parents. Nor should the agency reveal any identifying information to either party unless or until the agency can make a match or is authorized to provide matching information under the Registry statute.

## VII

### Conclusion

In summary, our opinion about the issues that you raised is that:

1.    Under the current legislative and regulatory scheme, without consent, DHR or a local department of social services may only disclose nonidentifying medical information from an adoption record to an adoptee.

2.    With a properly obtained consent, DHR or a local department may disclose both identifying and nonidentifying information from an adoption record to an adult adoptee or a birth parent.

3.    The agency may facilitate reunions between birth parents and adult adoptees as long as providing this service does not entail the otherwise prohibited disclosure of information from adoption records.

4.    In its operation of the Mutual Consent Voluntary Adoption Registry, SSA must make affirmative efforts to match registrants or to determine whether it should provide matching information:  this may require the agency to seek information from a local department of social services, another child placement agency, or a court.

J. Joseph Curran, Jr.
*Attorney General*

Sandra Barnes
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*